**Opinion filed January 30, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00239-CV

_____

## IN THE INTEREST OF A.M. AND M.V.M., CHILDREN

**On Appeal from the County Court at Law**

**Ector County, Texas**

**Trial Court Cause No. CC-3143-PC**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of the mother and fathers of V.E., A.M., E.M., and M.V.M.  The mother voluntarily relinquished her parental rights.  The father of A.M. and M.V.M. appeals the termination of his rights and, in three issues on appeal, challenges the legal and factual sufficiency of the evidence to support termination.[1]  We affirm.

---

[1]Neither the mother nor the other fathers filed a notice of appeal.

## I. *Termination Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds

for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Trial Court's Findings*

In this case, the trial court found that the father had committed two of the acts listed in Section 161.001(1)—those found in subsections (D) and (E). Specifically, the trial court found that the father had placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and that he had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. The trial court also found, pursuant to Section 161.001(2), that termination of the father's parental rights would be in the best interest of the children.

## III. *Evidence at Trial*

The record shows that the Department of Family and Protective Services removed eight-year-old A.M. and five-year-old M.V.M. from the parents' care in January 2012. The children were removed from their mother's home despite the Department's previous attempts to help the family. The record shows that the conditions of the home in which the children lived were deplorable, disgusting, and unfit and constituted a health hazard for the children. The Department's conservatorship caseworker, Courtney Reese, testified that some of the concerning conditions of the home were the following: no insulation in the walls, holes in the walls, no windows, doors that would not lock, no food, no electricity, no running water, no working toilet, trash everywhere, a roach infestation, and a foul odor. The children were dirty, were infested with lice, and had ringworms.

The mother and the children left the mother's home and went to stay with a person who had been approved by the Department and the trial court. Not long thereafter, the children were removed and placed with the father's sister. They

remained there for a week or two until the sister requested that the children be removed because she was receiving threatening phone calls. The children then went to High Sky Children's Ranch for a while and were ultimately placed in a foster home.

At the time of the final hearing, the children had been in the same foster home for over a year and, according to Reese, had "improved so much" during that time. Reese testified that the children were doing very well in their foster home, had a more positive outlook, and were now "'A' honor roll" students. Prior to being placed in foster care, A.M. had problems in school and had been held back due to lack of attendance. A.M. now "walks with her head high in the air because she's clean," "feels pretty," and "doesn't have bugs in her hair anymore."

According to Reese, the children want to continue living with their current foster parents; the children were emotionally traumatized and anxious about the court proceeding. Both children have expressed that they do not want to go with their father and that they do not want to be separated from their half-siblings (who also live in the foster parents' home). Reese believed that it would be in the children's best interest for the father's parental rights to be terminated and for the children to be available for adoption. The foster parents had informed Reese that they were willing to keep A.M., M.V.M., and the mother's other two children. The foster parents would provide a loving and nurturing home for the children and had services available to help them.

The father testified that, at the time of the final hearing, he had been indicted for the second-degree felony of attempted burglary of a habitation. He also had two prior convictions for burglary of a building and one for unauthorized use of a motor vehicle, and he had been to prison three times. The father testified that he was staying with his sister and that, at the time of the final hearing, he could not care for the children or provide them with a safe and stable home. The children

had not lived with the father but had stayed with him a few times. The father had lived in the mother's house and was aware of the deplorable conditions of that house, which the father admitted was "not a safe house for kids." He was also aware that the children "were out there running around in the street and stuff," that the children needed clothes, and that the children "hadn't been changed." The father had a history of marihuana use and did not comply with the requirements of his court-ordered family service plan.

### IV. *Analysis and Conclusion*

#### A. *Acts of the Parent*

The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the father had placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being. The testimony showed that the conditions of the mother's home endangered the children and also that the father was aware of the conditions of that home but allowed the children to remain there. Thus, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(D), and we overrule the father's first issue on appeal. Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the father's second issue in which he challenges the sufficiency of the evidence to support the trial court's finding under Section 161.001(1)(E). *See* TEX. R. APP. P. 47.1.

#### B. *Best Interest*

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it

5

relates to the children's relationships with the father and the foster parents, the emotional and physical needs of the children now and in the future, the desires of the children, the emotional and physical danger to the children now and in the future, the parental abilities of the father and of the foster parents, the conduct of the father, the programs available to assist the family, the plans for the children by the Department, the father's criminal history and pending indictment, the stability of the children's current placement, and the deplorable conditions of the home in which the father allowed the children to live, we hold that the evidence is both legally and factually sufficient to support the finding that termination of the father's parental rights is in the best interest of the children. *See id.* The trial court's finding as to best interest is supported by clear and convincing evidence. The father's third issue on appeal is overruled.

### *C. Additional Contention*

In addition to the arguments set out in his three issues, the father argues that his constitutional rights were violated because the trial court did not appoint counsel to represent the father until April 16, 2013, approximately two months before the final hearing in this case. However, the father was employed and did not fill out an affidavit of indigence until April 16, 2013. The termination hearing was held on June 25, 2013, and the father was represented by appointed counsel at that hearing. The father did not complain at trial that the appointment of counsel was untimely and violated his constitutional rights. Therefore, the father did not preserve this contention for review. TEX. R. APP. P. 33.1. Furthermore, under the circumstances of this case, we do not agree with the father's contention that his rights were violated by the trial court's failure to appoint an attorney earlier in the case. *See In re M.J.M.L.*, 31 S.W.3d 347, 353–55 (Tex. App.—San Antonio 2000, pet. denied). We note that, by statute, an indigent parent who responds in opposition to a termination case is entitled to have an attorney ad litem appointed

to represent the parent; however, before the trial court can conduct a hearing to determine the parent's indigence, the parent must file an affidavit of indigence. TEX. FAM. CODE ANN. § 107.013(a), (d) (West Supp. 2013); TEX. R. CIV. P. 145(b).

V. <em>This Court's Ruling</em>

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


January 30, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.